## THE STATE v. EDWARD Z. LINDERS, Appellant.

### Division Two, July 14, 1923.

1. **BURGLARY: Degrees: Building.** A dwelling house in which there is at the time some human being is the only building that may be the subject of burglary in the first degree. All other burglaries are classified by the statute as burglary in some lesser degree.

2. ———: **Indictment: Building: Kept and Deposited.** An indictment based on Section 3297, Revised Statutes 1919, which makes it burglary in the second degree to break into a building in which goods, etc., are "kept or deposited, with intent to steal or commit any felony therein," charging that defendant, "into a certain shed, garage and building," etc., "feloniously and burglariously forcibly did break and enter, with felonious intent . . . to steal, take and carry away certain goods . . . in the said shed, garage and building then and there kept and deposited, and in said shed . . . one Ford automobile truck, of the value of $300, of the goods, . . . of the said James Barry in the

said shed, garage and building, then and there being found then and there feloniously and burglariously did steal," etc., sufficiently charges that the building was one in which goods and the truck were at the time "kept and deposited." The clauses are not arranged in proper order, but when the indictment is considered as a whole it clearly appears therefrom that it charges that the building was one in which goods, etc., were kept and deposited. [Disapproving State v. Dale, 141 Mo. 284.]

3. ——: ——: No Motion to Quash: Substantial Rights of Defendant. Where no motion to quash the indictment was presented, any defect therein which does not affect the substantial rights of defendant will not avail after a judgment of conviction.

4. ——: Cross-Examination of Witness: Admitted Theft: Particulars. Where a witness for the State had testified that defendant had employed him to steal the automobile in question and had admitted that he had been twice convicted of stealing other automobiles, it was not prejudicial error to refuse to permit defendant to ask him on cross-examination if he had not stolen eleven automobiles and when he stole them and where he sold them, the only purpose of the inquiry being to discredit the witness's credibility.

5. ——: ——: Sustaining Objection to Question: No Showing of What Answer Would Be. The trial court cannot be convicted of error in sustaining an objection to a question asked by defendant of a witness for the State on cross-examination, unless some showing is made of what the witness's answer would have been if he had been permitted to answer. Even where the witness is an accomplice, an offer of proof must be made.

6. ARGUMENT TO JURY: Failure to Call Material Witness. The failure of defendant to subpoena an available witness whose testimony presumably would aid him to disprove the charge, or to call him to testify, if present, or to produce his deposition, if it is known his attendance cannot be secured, is not an improper subject of comment by the State's attorney in his argument to the jury.

7. ——: ——: Continuances at Defendant's Request. In commenting upon defendant's failure to produce a witness material to his defense, the attorney for the State said to the jury that defendant "told you the case had been set fifteen times and this witness had been present every time, yet the record does not show that" and "when this case was set it was continued at the request of defendant." The record shows that the case had been continued three times at defendant's request, but the record was

State v. Linders.

not in evidence. *Held*, that the general rule is that prior proceedings in a case cannot be referred to in an argument to the jury unless put in evidence, but under the circumstances of this case the reference to former continuances at the request of defendant was not prejudicial.

8. **BURGLARY: Conspiracy: Instruction to Steal an Automobile.** Testimony of an accomplice that defendant only told him to steal a certain automobile kept in a certain garage cannot be held to be insufficient to convict defendant of burglary. When two or more persons conspire to commit a crime, each is responsible individually for everything which may proximately result from an attempt to accomplish the unlawful purpose, whether or not actually contemplated at the time the joint arrangement was made. If defendant procured an accomplice to steal an automobile kept in a garage, and the accomplice in committing the theft burglarized the garage, defendant is likewise guilty of burglary.

9. ————: **Sufficient Evidence.** Notwithstanding there was substantial evidence that defendant bought the identical automobile truck from another prior to the time the crime was committed, there is substantial evidence that he was a party to burglarizing the garage of the prosecuting witness and taking therefrom the truck he and his accomplice are charged with stealing, and the question of his guilt was therefore for the jury to determine.

10. ————: **Instruction: Conspiracy to Steal.** An instruction telling the jury that if defendant entered into a conspiracy with the actual burglar "to feloniously break into the shed, garage and building," etc., then defendant was guilty of burglary, correctly declared the law, notwithstanding the testimony of the accomplice showed only a conspiracy to steal the automobile. His testimony further being that defendant knew the automobile was in the garage and hired the accomplice to steal it, and it being necessary to commit the burglary in order to steal the automobile, defendant is guilty of the burglary committed by the accomplice in his attempt to commit the theft.

Appeal from St. Louis City Circuit Court.—*Hon. Frank Landwehr*, Judge.

AFFIRMED.

*Frumberg & Russell* for appellant; *Conway Elder* of counsel.

(1) An indictment for burglary under Section 3297, Revised Statutes 1919, must by distinct averment describe the building alleged to have been burglarized as one in which goods, etc., are at the time deposited and kept. 9 C. J. 1038; 4 R. C. L. 435; State v. Dooley, 64 Mo. 145; State v. Shields, 89 Mo. 259; State v. Tyrrell, 98 Mo. 354; State v. Dale, 141 Mo. 284; State v. Watson, 141 Mo. 338; State v. Moten, 276 Mo. 354. (2) Great liberality should be indulged in the cross-examination of an alleged accomplice. State v. Steele, 226 Mo. 583; State v. Smith, 250 Mo. 367; State v. Hack, 118 Mo. 99. (3) It is reversible error for the court to permit counsel for the State to argue or comment upon matters not in evidence, over objection of defendant. State v. Voltz, 269 Mo. 194; State v. Horton, 247 Mo. 657; State v. Ferguson, 152 Mo. 92; State v. Dietz, 235 Mo. 332.

*Jesse W. Barrett*, Attorney-General, and *J. Henry Caruthers*, Assistant Attorney-General, for respondent.

(1) The information is in approved form and sufficient. Sec. 3297, Laws 1921, p. 196; State v. Burns, 263 Mo. 594, 597; State v. Moss, 216 Mo. 438, 441. "Garage" is the modern substitute of the ancient livery stable and describes a building embraced within the expression "any building" used in said Section 3297. Smith v. O'Brien, 94 N. Y. Supp. 674. (2) The cross-examination refused by the court related to a collateral and immaterial issue and was properly rejected. The time of stealing, the number and disposition of other automobiles by witness Holzkamp could throw no light on the innocence or guilt of appellant. It is within the discretion of the court as to how far the examination of witnesses upon points collateral to the main issue shall be allowed. Adriance v. Arnot, 31 Mo. 472; Coppersmith v. Railroad, 51 Mo. App. 367. (3) In order to justify a reversal of judgment it should appear that the remarks of counsel for the State were prejudicial. It does not appear from the record that the argument complained of here tended

in any way to influence or prejudice the jury. State v. Harvey, 214 Mo. 411; State v. Church, 199 Mo. 638; State v. Hibler, 149 Mo., 484.

DAVID E. BLAIR, J.—Defendant was convicted of the crime of burglary in the second degree in the Circuit Court of the City of St. Louis. The jury fixed his punishment at two years in the State Penitentiary. After unavailing motions for new trial and in arrest of judgment, sentence was pronounced on the verdict and defendant has appealed.

The State's evidence tended to prove that at about seven o'clock p. m., April 25, 1919, a Ford automobile belonging to one James Barry, or in his possession, was put in the garage at the home of said Barry in the city of St. Louis. The doors of the garage were closed. The automobile was gone therefrom at seven o'clock the next morning, and the lock on the door of the garage leading to the alley was found to be broken. The door of the garage leading into the yard had been closed, but not locked the night before.

The following November, Barry and men who had driven the automobile for him identified portions of an automobile as belonging to the one taken out of possession of Barry the preceding April. The automobile was recovered from one Blavatt and the defendant was arrested.

One Irvin Holzkamp testified that defendant employed him to steal the Barry automobile and agreed to give him fifty dollars to procure the same for him. Defendant pointed out the garage to him. That same night Holzkamp took Barry's automobile out of the garage and drove it to a garage on Bird Avenue, which he had rented at the direction of the defendant.

The next day Holzkamp informed defendant that he had taken the automobile, and the defendant agreed to and did come over to the rented garage that night. Working together they removed the wheels and body and had them repainted, and defendant filed off the motor number

and put on a new number with dies. After this was done Holzkamp put a speedster body upon the chassis and drove the automobile for about three weeks and turned it over to defendant.

Defendant admitted that the particular automobile, claimed by Barry and identified by him and his men, was formerly owned by him and had previously been in his possession. He testified that he purchased it from one Joseph Browning in March, 1918, or more than a year before Barry's automobile was stolen; that said automobile was used by the Crown Margarine Company from March 21, 1918, to February, 1919, when defendant engaged in the tire-and-battery-service business and needed the automobile for himself. He then took off the Crown Margarine body and replaced it with a roadster body which he purchased from the Gunn Transfer Company. Afterward defendant borrowed $250 from one Schultz, and he later turned over the automobile to Schultz and Schultz sold it for more than enough to satisfy the debt and paid the surplus to the defendant. Blavatt, who had the automobile in question at the time of defendant's arrest, was the purchaser from Schultz. The purchase of a roadster body from Gunn Transfer Company, the borrowing of $250 from Schultz and the delivery of the automobile to him and the sale to Blavatt were corroborated by other witnesses.

The bill of sale from Browning to defendant described a Ford automobile and gave a motor number identical with the motor number of the automobile found in Blavatt's possession and such motor number was different from the motor number of the Barry automobile. There was evidence both ways on the question of a change in the motor number on the automobile recovered.

Defendant denied that he took Holzkamp to Barry's garage and arranged with him to steal the automobile, and denied all other facts testified to by Holzkamp which tended to connect him with the burglary of the garage and the larceny of the automobile. He admitted that Holzkamp had been in his employ, but claimed he had

been discharged prior to the date the automobile was stolen.

Holzkamp admitted that he had stolen an automobile previously and had been paroled. He was under parole for stealing the Barry automobile when he testified against the defendant. He was somewhat hazy as to the location of the garage on Bird Avenue, and could not remember where he purchased materials for making the speedster body.

I. The first assignment of error is that the indictment is insufficient to support the conviction of burglary
Indictment: because it does not describe the building which
Kept and is the subject of burglary. The indictment was
Deposited. based on Section 3297, Revised Statutes 1919 (Section 4520, R. S. 1909), which is as follows:

"Every person who shall be convicted of breaking and entering any building, the breaking and entering of which shall not be declared by any statute of this State to be burglary in the first degree, or any booth or tent, or any boat or vessel or railroad car in which there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, with intent to steal or commit any felony therein, shall, on conviction, be adjudged guilty of burglary in the second degree."

A dwelling house of another in which there is at the time some human being is the only building which may be the subject of burglary in the first degree. [Sec. 3291, R. S. 1919.] All other burglaries are denounced by the statute as burglary in lesser degree. The indictment was in two counts. The first count was intended to charge defendant with burglary in the second degree and with larceny, and the second count charged defendant with receiving stolen property. The jury found defendant guilty of burglary in the second degree. The verdict was silent as to the larceny charge and the charge of receiving stolen property. Only the first count of the indictment need be noticed. With caption and formal parts omitted, it reads as follows:

"The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court, duly impaneled, sworn and charged, upon their oath present, That Edward Z. Linders on the 25th day of April, one thousand nine hundred and nineteen, at the city of St. Louis aforesaid, into a certain shed, garage and building of James Barry there situate and being, feloniously and burglariously, forcibly did break and enter, with felonious intent then and there and thereby feloniously and burglariously to steal, take and carry away certain goods, wares, merchandise, other valuable things and personal property in the said shed, garage and building, then and there kept and deposited and in the said shed, garage and building one Ford automobile truck, of the value of $300, of the goods, wares, merchandise, other valuable things and personal property of the said James Barry in the said shed, garage and building, then and there being found then and there feloniously and burglariously did steal, take and carry away, with the felonious intent then and there to permanently deprive the owner of the use thereof, and to convert the same to his own use; against the peace and dignity of the State."

The specific attack upon the indictment is that it does not charge that the building was one in which goods, wares, merchandise or other valuable things were at the time kept and deposited. In support of the sufficiency of the indictment, the Attorney-General cites State v. Burns, 263 Mo. 593; State v. Moss, 216 Mo. 436. The informations in those cases were in the same form as the indictment now before us, in so far as the clause descriptive of the building is concerned. However, in the Burns Case the defendant was convicted of larceny by means of burglary and acquitted of burglary. The information was upheld, but its sufficiency must be judged solely as to the charge of larceny. [State v. Moten, 276 Mo. l. c. 358.]

In the Moss Case the information was held good as against an attack on the ground that it did not suffi-

ciently charge the manner of the breaking and entry. In neither of the cases above referred to were the informations considered from the standpoint of the sufficiency of the description of the building; that is to say, whether they sufficiently charged that the buildings were those in which goods, wares, etc., were kept and deposited.

Appellant relies on the case of State v. Moten, supra. In that case the information, as to the description of the building, charged: "Into a certain store, shop and building of Herman Affolter there situate and being, feloniously and burglariously, forcibly did break and enter, with intent then and there, and thereby feloniously and burglariously, to steal, take and carry away certain goods, wares, merchandise, and other valuable things and personal property in the said store, shop and building."

It will be noted that the information in the Moten Case failed to use the words "kept and deposited" and it seems FARIS, J., made a distinction because the words employed in the statute were not used in the information. He said:

"In order to charge burglary under Section 4520, for the burglarious entry of a building in which goods, etc., are at the time kept and deposited, apt allegation must be made of the fact that goods, etc., are kept and deposited therein, together with the further averment that the breaking and entry was with the intent to steal the goods, etc., in the said building then and there being."

The indictment in the instant case is like the information in State v. Moss, supra, which Judge FARIS cites as authority for the rule announced and immediately above quoted. Judge FARIS also noted the fact that the words "kept and deposited" were used in the information in the Burns Case and thereby inferentially held the Burns information good as against the attack that the building was not sufficiently described as one in which goods, etc., were kept and deposited.

Appellant also relies upon State v. Dale, 141 Mo. 284, wherein SHERWOOD, J., held the indictment fatally de-

fective, although it had not been attacked by counsel for appellant. The portion of the indictment held bad appears at the foot of page 286 and was as follows:

"Did then and there feloniously and burglariously break into and enter a certain building of A. E. Forderhase by then and there forcibly breaking the glass, and spreading the iron bars apart at the back of the window of said building there situate, in which divers goods and other valuable things were then and there kept for sale and deposited."

With all due respect to the eminent jurist who condemned the indictment, we are unable to agree that such indictment did not describe the building as one in which goods, etc., were kept and deposited. The clause he held fatally defective was doubtless awkwardly arranged with words and phrases out of their natural and proper order. If the clause had been arranged, without the omission of a single word, to read as follows: "Did then and there feloniously and burglariously break into and enter a certain building of A. E. Forderhase there situate, in which divers goods and other valuable things were then and there kept for sale and deposited, by then and there forcibly breaking the glass and spreading the iron bars apart at the back of the window of said building," the most critical pleader could not possibly have maintained that the building was not properly described as one subject to burglary within the meaning of the section of the statute then under consideration.

So in the indictment in the present case, though the averment is possibly not in the proper order, it clearly appears from the four corners of the indictment that the building, into which appellant was charged with burglariously breaking and entering, was one in which goods, etc., were then and there kept and deposited. In the Moten Case, FARIS, J., seems to have made a distinction between the words, goods, etc., in the said store, shop and building, and goods, etc., *kept and deposited* in said building.

It is true that here the allegation, with regard to the goods, etc., being kept and deposited in the building and the garage, was used in connection with the allegation as to the intent of defendant in breaking and entering the building. Nevertheless it is clear that, within the indictment as a whole, is contained the charge that the building was one in which goods, etc., were kept and deposited.

The criticism made of the indictment does not appear to be one which could possibly have affected the substantial rights of defendant. No motion to quash the indictment was presented. If any meaning is to be given to Section 3908, Revised Statutes 1919, we do not see how the complaint can be considered now. That section, so far as pertinent, is that "no indictment . . . shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected; . . . nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits: *Provided,* that nothing herein shall be so construed as to render valid any indictment which does not fully inform the defendant of the offense of which he stands charged."

We are not prepared to say that an indictment which charges defendant with breaking into a certain building with intent to steal goods kept and deposited therein does not fully inform the defendant that he stands charged wih breaking into a building in which goods, etc., were kept and deposited. We do not understand any of the cases hold that. If they do, they should be overruled on the point. The indictment must be held good as against attack after verdict.

II. Reversible error is urged concerning the action of the trial court in refusing defendant the right to have witness Holzkamp answer certain questions upon cross-examination. Defendant first points out the following:

Cross-Examination.

"Q. When did you steal those automobiles in Illinois or Missouri?

"Mr. Boisseau: Object to that as immaterial. He testified he was convicted once.

"Court: I will sustain the objection.

"Mr. Frumberg: Note my exception. Does Your Honor hold—

"Court: He admits the conviction.

"Q. Where did you sell those automobiles that you stole in Illinois?

"Mr. Boisseau: Object to that for the same reason.

"Court: Sustained."

If the question related to the theft of an automobile at Decatur, Illinois, and to the theft of the Barry automobile, the record already showed the dates of the thefts. If thefts of other automobiles were meant, the question was objectionable in assuming there were such other thefts. The same may be said of the question calling for the places in Illinois where such thefts occurred. Holzkamp had already admitted stealing an automobile at Decatur, Illinois, about a year and a half before he stole the Barry automobile.

The next instance complained of by defendant is shown in the record as follows:

"2. You stole eleven automobiles, didn't you, altogether?

"Mr. Boisseau: Object to that as immaterial.

"The court sustained the objection, to which action and ruling of the court defendant, by his counsel, then and there duly excepted and still continues to except."

The only purpose in permitting the witness to be cross-examined concerning other thefts was to affect his credibility as a witness. It is difficult to see how the defense could have been prejudiced by the action of the trial court in excluding the testimony sought to be elicited by the question. The witness had already admitted having been twice convicted for stealing or taking automobiles. He was, therefore, a confessed thief. We think

the trial court should have permitted the witness to answer, but the witness was already discredited by his admission of two thefts and we think the ruling was not prejudicial.

An additional reason why the trial court may not now be convicted of error in excluding this testimony is that defendant made no offer to show what the answers of the witness would have been to any of the questions above set out if he had been required to answer them. The questions themselves did not disclose the nature of the answer sought. Under such circumstances an offer of proof must be made before the trial court can be convicted of error in excluding the testimony. [State v. Martin, 124 Mo. l. c. 523 and cases cited; State v. Arnold, 206 Mo. l. c. 596, and cases cited; State v. Shapiro, 216 Mo. l. c. 371; State v. Lovell, 235 Mo. l. c. 355 and State v. Kozlickie, 241 Mo. l. c. 307.]

While a wider scope of cross-examination should be permitted at the hands of defendant's counsel of a witness who is an accomplice, where it is suspected that clemency of some sort has been extended to him, than is permissible of a witness without such interest, as suggested in State v. Steele, 226 Mo. l. c. 602, cited by defendant, yet such considerations do not dispense with the necessity of an offer of proof. The assignment is overruled.

III. Complaint is made of the nature of the argument made to the jury by the circuit attorney. Defendant testified that he purchased the automobile chassis claimed by Barry from one Browning. Browning was not called as a witness. Defendant testified that Browning had been present on previous occasions when the case had been set for trial. Defendant was asked why he did not have a subpoena issued for Browning and the court sustained an objection to the question. The circuit attorney then asked defendant if he had taken Browning's deposition and the court did not permit this question to be answered. When the cir-

*Argument to Jury.*

cuit attorney came to argue the case, the following occurred:

"Mr. Boisseau: This man Browning is not here in court. He did not serve a subpoena on that man Browning and he did not take his deposition to be used here. Do you think any innocent person who had bought an automobile from a man and who is here charged with stealing that very automobile do you think—

"Mr. Frumberg: Object to the statement with reference to the deposition on the ground that the court ruled it out and Your Honor sustained my objection to that question and he has gone into matters extraneous to the evidence in this case and I ask that the jury be instructed to disregard the statement that he did not take Browning's deposition.

"The court overruled the objection, to which action and ruling of the court defendant, by his counsel, then and there duly excepted and still continues to except."

The trial court did not commit reversible error in permitting this sort of argument. Defendant testified that he had not had a subpoena issued for Browning, but had personally told him to come to the trial. There was no evidence admitted showing whether or not Browning's deposition had been taken. Counsel objected to the question as to whether such deposition had been taken. It was very evident it had not been taken "for use here"—that is, on the trial—because it was not so used. The failure to subpoena an available witness whose testimony presumably would aid a party or to call him to testify, if present, or to produce his deposition, if it is known his attendance cannot be secured, is not an improper subject of comment by counsel in argument before the jury. [38 Cyc. 1490; Ryans v. Hospes, 167 Mo. 342, 67 S. W. 285; Levels v. Railroad, 196 Mo. l. c. 622; Stagner v. Rich Hill, 119 Mo. App. 281.]

The following also occurred in the argument of the circuit attorney:

"Mr. Boisseau (Resuming argument to the jury): Why is it that Browning hops up on every occasion ex-

cept on the occasions when he could come and testify. Do you believe that story? If not, why does he tell that lie. He told you the case had been set fifteen times and Browning had been here every time, yet the record did not show that. When this case was set it was continued at the defendant's request—

"Mr. Frumberg: Object to that remark and ask that the court instruct the jury to absolutely disregard the statement that the case was continued once or any other number of times at the request of the defendant, on the ground that it is improper and highly prejudicial to the defendant.

"The court overruled the objection, to which action and ruling of the court defendant, by his counsel, then and there duly excepted and still continues to except."

The record before us shows that the case was continued at the request of defendant on October 25, 1920, January 18, 1921, and February 28, 1921. The general rule is that prior proceedings cannot be referred to in argument unless put in evidence. [38 Cyc. 1492.] Counsel was arguing a fact shown in the record, but not in the evidence. However, we do not think the argument was prejudicial in its reference to the former continuance being had at defendant's request. We do not regard the preceding portion of the argument as properly objectionable. The assignment is overruled.

IV. It is urged that the evidence is insufficient to authorize the conviction of the defendant of the crime of burglary. The reasoning of appellant's counsel seems to be that the evidence of Holzkamp only shows that defendant told him to steal the automobile and not to commit a burglary. When two or more persons conspire to commit a crime, each is responsible individually for everything which may proximately result from the attempt to accomplish such unlawful purpose, whether actually contemplated at the time the arrangement was made or not. [State v.

*Sufficient Evidence.*

Vaughan, 200 Mo. l. c. 17.] Clearly, if defendant procured Holzkamp to steal an automobile kept in a garage, he must be regarded responsible for all acts of Holzkamp in carrying out his instructions. In that case the conspiracy must be regarded as broad enough to include the burglary.

The testimony of Holzkamp, together with the possession by defendant of the automobile, identified by Barry and men who had driven the automobile, was sufficient to authorize submission of the case to the jury, and its verdict, based as it was upon substantial evidence and approved by the trial judge, who also saw and heard the witnesses and observed their demeanor on the witness stand, cannot be disturbed by this court.

True, there appears in the record substantial evidence tending to show that defendant purchased the identical automobile from one Browning prior to the date Barry's automobile was stolen. It is common knowledge that there are hundreds of thousands of Ford automobiles in use and many thousands of them in this State. The jury may have come to the conclusion that defendant had manufactured his proof of prior ownership. He did not produce the man he claimed sold the automobile to him. He issued no subpoena for him to require his attendance at the trial. The notary public who took the acknowledgment of Browning to the bill of sale, which described the automobile by motor number, never saw the automobile nearer than across the street. Defendant claimed the Crown Margarine Company used the automobile for about a year, yet he did not produce any person connected with that concern to corroborate his statement or to identify the automobile used by it as being the one claimed by Barry.

The record cannot be carefully read, as we have read it, without coming to the conclusion that defendant did quite a business of changing bodies on automobiles and repainting automobiles and had numerous cars in his possession at different times within short periods.

Defendant had been in various business ventures in St. Louis and had lived in that city all of his life, yet he produced not a single witness to testify that his reputation for honesty and fair dealing was good. All these facts must have had their influence upon the minds of the jury and doubtless were weighed in the scales. We are not authorized to disturb the verdict the jurors reached.

V. The only criticism of the instructions made in the brief of counsel is the instruction on conspiracy, which told the jury in substance that, if defendant entered into a conspiracy with Irvin Holzkamp "to feloniously break into the shed, garage and building," etc., then defendant was guilty of such offense. This criticism is based on the proposition that the testimony of Holzkamp only showed a conspiracy to commit a larceny and not a burglary. For the reasons advanced in the preceding paragraph, we think the criticism is not justified. According to the State's evidence, the defendant knew the automobile was in the garage and hired Holzkamp to steal it. If it was necessary to commit a burglary to steal it, then defendant may well be held to have hired Holzkamp to commit burglary also.

*Instruction: Conspiracy to Steal.*

We have carefully studied the instructions given by the trial judge. They show painstaking care to cover every possible phase of the law applicable to the facts in the case and are admirably clear and fair.

VI. The motions for new trial and arrest raise points not assigned as error or discussed in the brief of appellant. We have discussed no point not raised in the brief, but have read the motions with considerable care and studied the record in the light of such motions and are satisfied that the brief raises all the questions necessary to be considered to determine whether defendant was given a fair and impartial trial.

*Unbriefed Assignments.*

Our conclusion is that the trial court committed no reversible error; that the verdict shows that the jury was not swayed by bias or prejudice, and that the judgment rendered thereon merits affirmance at our hands. It is so ordered. All concur.