STATE of Missouri, Respondent,

v.

Vernie Lee WHITAKER and Lee Taylor,
Appellants.

No. 44536.

Supreme Court of Missouri.
Division No. 2.

Feb. 14, 1955.

See also 275 S.W.2d 322.

Tom A. Shockley, Waynesville, for defendants.

John M. Dalton, Atty. Gen., David Donnelly, Special Asst. Atty. Gen., for plaintiff-respondent.

STOCKARD, Commissioner.

On May 27, 1954, Vernie Lee Whitaker and Lee Taylor were convicted in the Circuit Court of Phelps County, Missouri, of burglary in the second degree. The punishment of each was fixed at imprisonment in the State Penitentiary for a term of four years. Following the overruling of their motion for a new trial, allocution, sentence and judgment in accordance with the verdict, they have appealed to this Court.

The evidence of the State showed the following to have occurred: About ten o'clock and again at ten-thirty o'clock in the evening of April 14, 1954, the two defendants were seen together by police officers in the general neighborhood of Carp's Department Store in the City of Rolla. Shortly after one o'clock in the morning

of April 15, 1954, Guy Faulkner reported to the police that he had heard a loud crash, like glass breaking, behind Carp's Department Store. About the same time Claude Hawkins observed someone running from behind the store building to a trash dump, a distance of about twenty to twenty-five feet, and he heard a noise like "somebody in paper or some kind of rubbish." He did not recognize the person. About ten minutes after one o'clock Floyd Crawford and John Martin, both police officers, investigated the report of Faulkner. They entered the alley behind Carp's Department Store from opposite directions and there found defendant Taylor at a trash dump. Officer Martin saw Taylor "just sit down in the trash bin there" and he slapped Taylor on the back and said, "What is the matter, Boy?" Taylor replied that he was sick. Officer Martin then asked him, "Where's Vernie (defendant Whitaker) at?" and Taylor said he did not know. Officer Crawford arrived immediately thereafter and Taylor was standing with his head "tilted, looking up toward the back of Carp's Store." The police officers then discovered defendant Whitaker "sticking out of the window" located in the rear wall of the building used by Carp's Department Store. The bottom of the window in which Whitaker was found was approximately seven and one-half feet above the ground. On the outside and over the window was an iron bar grating which did not extend to the top of the window. Whitaker was "hung" at the top of the window with all of his body inside the window "except his left hip." The two top panes of the window and the wooden divisional bar separating the panes were broken out. Broken glass was both outside and inside the building immediately below the window. The part of the window broken out led into an area between a "false" ceiling and the roof where there were no goods, wares, merchandise or other valuable thing. In the room below the ceiling there were goods and merchandise estimated to be worth $40,000. In the ceiling there was a closed, but not secured, "manhole" within a few feet of the window which led into the room

below. No part of the window below the ceiling was broken and there was no evidence that there had been any tampering with any of the doors or openings leading to the room where the goods and merchandise were kept. While the officers were taking the defendants to the police car, Whitaker was asked how he happened to be in the window, and Taylor said, "he must have fell out of an airplane." Taylor then asked Whitaker, "how come you to jump out of the airplane?" and Whitaker replied that "he didn't know how come him to fall out nor how come him to be up there."

Taylor was "fairly well intoxicated" and Whitaker was "partly intoxicated." At the police station the defendants said they had been together all evening. At the close of the business day of April 14, 1954, all doors and windows of the building used by Carp's Department Store had been secured, and neither defendant had permission to enter any part of the building.

No evidence was presented on behalf of the defendants.

Defendants contended in their motion for a new trial that the trial court erred in refusing to direct a verdict for them as requested for the reason that the evidence was wholly insufficient to sustain a conviction in that the evidence established that Whitaker "was not completely in said building," and for the further reason that there was no breaking and entering "into the store building where the goods and merchandise were kept and deposited."

■ Section 560.070 RSMo 1949, V.A. M.S., in its parts here applicable, provides that "every person who shall be convicted of breaking and entering any building * * * in which there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, with the intent to steal or commit any crime therein, shall, on conviction, be adjudged guilty of burglary in the second degree." There was substantial evidence, and the jury was justified in finding, that defendant Whitaker broke out two panes of the window of the described

building and also broke out the wooden divisional bar separating the panes. This constituted a "breaking" within the meaning of Section 560.070 RSMo 1949, V.A. M.S.; State v. Helms, 179 Mo. 280, 78 S.W. 592; State v. O'Brien, Mo.Sup., 249 S.W.2d 433; 12 C.J.S., Burglary, § 3b., p. 669.

■ There is no merit to the contention of defendants that a judgment of acquittal should have been entered because the only breaking and entering proved was into the area of the building between the ceiling and roof. Defendants cite State v. Allen, 344 Mo. 335, 126 S.W.2d 236, and purport to quote from the opinion in that case as follows: "There must be a breaking and entering the building where the merchandise is kept and deposited." Not only is there no such statement in the cited case, but it does not consider the question here presented. The rule applicable to this case is set out in 12 C.J.S., Burglary, § 10, p. 674, where it is stated that "one who has cut a hole through the roof and entered into the attic of a building has effected a sufficient entrance to constitute burglary although he has not gone through the ceiling of the attic into the main part of the building where goods were stored."

■ The contention of defendants that there was no entry because Whitaker "was not completely in said building" is also without merit. It is not necessary that a person get his whole body into the building. The least entry of any part of the body is sufficient. 12 C.J.S., Burglary, § 10b., p. 674; 2 Wharton, Criminal Law (12th Ed. 1932) § 969, p. 1273. There is substantial evidence that a part or most of the body of Whitaker was through the window and in the building. There was an "entering" of the building within the meaning of Section 560.070 RSMo 1949, V.A.M.S.

■ The defendants were charged with a breaking and entering with the intent to steal. This intent must be established by the evidence beyond a reasonable doubt. State v. Shipman, 354 Mo. 265, 189 S.W.2d 273; State v. Brown, Mo.Sup.,

217 S.W.2d 546. Such intent may and generally must be proved by circumstantial evidence, for as a rule it is not susceptible of direct proof. State v. Farris, Mo.Sup., 243 S.W.2d 983; 12 C.J.S., Burglary, § 55, p. 731. The facts and circumstances in this case are that a short time after one o'clock in the morning Whitaker entered a store building containing valuable property by crawling over an iron grating and breaking out part of a window. Whitaker would not have entered the building at the time and manner he did or by the method used if he were entering for a lawful purpose. The intent with which certain acts are done may be found, and frequently can only be found, from the attendant circumstances and must ordinarily be inferred from the facts. State v. Lugar, Mo.Sup., 84 S.W.2d 614. If a person breaks and enters a house intending to steal, he is not exonerated from the commission of burglary merely because he did not steal anything or because he was frightened away before he carried out his intent. State v. Shipman, supra. Neither is he to be exonerated because during the breaking and entering he made so much noise that he attracted the police to the scene before he was able to accomplish his mission. Consummation of the intent is not necessary to complete the crime of burglary. State v. Farris, supra. The facts and circumstances shown are sufficient to authorize a finding that Whitaker broke and entered the building with the intent to steal. The jury so found under appropriate instructions. The finding is supported by substantial evidence.

■ It is next contended that the evidence is insufficient to sustain the conviction of defendant Taylor. In determining the sufficiency of the evidence to support the verdict, all of the substantial evidence offered by the State is taken as true, together with all reasonable inferences to be drawn therefrom, and by substantial evidence is meant "evidence from which the triers of the fact reasonably could find the issue in harmony therewith." State v. Gregory, 339 Mo. 133, 96 S.W.2d 47, 52; State v. Breeden, Mo.Sup., 180 S.W.2d

684; State v. Miller, Mo.Sup., 202 S.W.2d 887.

If Taylor aided and abetted Whitaker in the burglary, he too was guilty of burglary. State v. Massey, 358 Mo. 1108, 219 S.W.2d 326; 12 C.J.S., Burglary, § 29, p. 688. It was not necessary that Taylor actually enter the building. State v. Wall, 339 Mo. 111, 96 S.W.2d 36; State v. Peebles, 178 Mo. 475, 77 S.W. 518.

Taylor and Whitaker were together a short time before Whitaker broke and entered the building, and after they were apprehended they admitted they had been together all evening. A short time before the arrival of the police officers witness Faulkner heard the sound of breaking glass from behind Carp's Department Store, and about the same time witness Hawkins saw someone run from behind the store to a trash dump. A few minutes later the two officers found Taylor at the trash dump looking up at the top of the window where Whitaker had entered the building after breaking out the window. Taylor denied to the police officer that he knew where Whitaker was although he and Whitaker had been alone in the alley together and subsequently admitted that they had been together all evening. In addition, Taylor and Whitaker were together in the alley behind the Carp's Department Store building at one o'clock in the morning, which without explanation and when taken in connection with all the other circumstances, including the actual breaking and entering of the building by Whitaker, created a reasonable inference that they were working together. The evidence connecting Taylor with the crime is circumstantial, but the proof may be made by circumstantial evidence, the verity of which is for the jury. State v. Williams, 356 Mo. 1048, 204 S.W.2d 748. The basis for the State's case is that of a conspiracy between Whitaker and Taylor, and a conspiracy, like any other fact, may be shown by circumstantial evidence. State v. Fields, 234 Mo. 615, 623, 138 S.W. 518, 520; State v. Menz, 341 Mo. 74, 106 S.W.2d 440, 448; State v. Williams, 356 Mo. 1048, 204 S.W. 2d 748.

Where the State relies upon circumstantial evidence to establish defendant's guilt as here, the facts and circumstances relied upon by the State must be consistent with each other and with the hypothesis of defendant's guilt, and inconsistent with his innocence, and every other reasonable hypothesis except that of guilt. State v. Perkins, Mo.Sup., 18 S.W. 2d 6; State v. Richardson, Mo.Sup., 36 S.W.2d 944; State v. Pritchett, 327 Mo. 1143, 39 S.W.2d 794; State v. Murphy, 356 Mo. 110, 201 S.W.2d 280; State v. Missey, 361 Mo. 393, 234 S.W.2d 777; State v. Jones, 363 Mo. 998, 255 S.W.2d 801; 23 C.J.S., Criminal Law, § 907, p. 149. Here all the facts and circumstances, while not of themselves conclusive, are consistent with each other, and are consistent with the hypothesis of the guilt of defendant Taylor. The circumstance of Taylor being found at the trash dump shortly after one o'clock in the morning immediately after someone was seen to run from the back of the building to the trash dump and at the time Whitaker had broken and entered the building, and the circumstance of Taylor looking up to where Whitaker had broken into the building and attempting to protect him by denying that he knew where he was when Taylor admitted that he and Whitaker had been together all evening, and all the other circumstances shown by the evidence, are inconsistent with his innocence and are inconsistent with every other reasonable hypothesis except that of guilt. The facts and circumstances shown by the evidence are sufficient, as a matter of law, if believed by the jury, to induce a belief of Taylor's guilt beyond a reasonable doubt.

In their motion for new trial the defendants claimed error by reason of some remarks of the trial judge made to the jury at a time when the jury had returned to the courtroom after being unable to reach a verdict. The trial judge asked for the numerical division of the jury appar-

ently to determine if it could probably reach an agreement if it deliberated further. In answering, one of the jurors volunteered the information that the jury then stood "eleven to one, guilty." Other remarks were then made by the trial judge concerning the desirability of jurors reaching an agreement if they can do so without any juror sacrificing his convictions. In the motion for new trial, it was contended that the remarks tended to cause a verdict of guilty to be reached. In their brief defendants also contend, for the first time, that the remarks constitute a summing up of or a comment on the evidence in violation of Rule 26.09, 42 V.A.M.S. A careful reading of the remarks does not disclose any violation of Rule 26.09. There was no comment on or summing up of the evidence. Not one case is cited in defendants' brief in support of their contentions. No objection was made by the defendants at the time to the remarks of the trial judge, and the jury was permitted to be returned to the jury room for further deliberations without there being made any claim of prejudice. There was no motion to declare a mistrial or that the jury be discharged. At the time the remarks were made, counsel for the defendants apparently did not believe them to be improper or that the remarks were in any way prejudicial. The first objection to the remarks of the trial judge were made in the motion for new trial.

In State v. Quilling, 363 Mo. 1016, 256 S.W.2d 751, 754, assignment of error was made because the jury was permitted to consider parole practices. The incident arose when the jury returned to the courtroom during its deliberations and in answer to a question of the foreman, the trial judge explained that the jury was not to consider what might subsequently happen to the penalty imposed by reason of parole. It was ruled that, "Defendant's counsel was admittedly present at the time of this occurrence, but apparently he did not regard the incident as prejudicial because no objection was interposed to what transpired. In this situation, and bearing in mind that the information thus trans-

mitted is not charged to have been incorrect, the court was under no duty to dis-charge the jury and declare a mistrial on its own motion for a mere irregularity, as this incident must be regarded." The remarks in this case were at most an irregularity which could have been corrected by the trial judge if the objections of defendants had been brought to the court's attention at the time. But, defendants, in effect, consented to the remarks by making no objection whatever, and took their chance with the jury. They "cannot thus gamble on a favorable verdict" by permitting the trial to go to conclusion without objection, and then contend for the first time in their motion for a new trial that the court committed reversible error. State v. Mosier, Mo.Sup., 102 S.W.2d 620.

This Court has held that, "we can perceive no distinction in principle between an exception to improper remarks of counsel and those of the judge. If deemed prejudicial, they should be called to the attention of the court at the time, · * * *." State v. Knowles, 185 Mo. 141, 177, 83 S.W. 1083, 1093. If counsel believes that remarks may improperly influence the jury he should object immediately and afford the court an opportunity to correct any erroneous impression. State v. Linders, Mo. Sup., 224 S.W.2d 386. Issues of this nature are not timely presented when first raised in a motion for new trial. State v. Beaghler, Mo.Sup., 18 S.W.2d 423, 427; State v. Pittman, Mo.Sup., 221 S.W.2d 163; State v. Johnson, Mo.Sup., 248 S.W.2d 654; State v. Quilling, supra.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

ELLISON, P. J., LEEDY and TIPTON, JJ., and BROADDUS, Special J., concur.